UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Rachel V. Rose, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1621 |
| | § | |
| BCE Technologies, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is the Motion to Strike Complaint and Amended Complaint and Dismiss with Prejudice (Doc. 5) filed by Defendants BCE Technology Corporation ("BCE"), Charles Davidson, Bradford Gross, William Gross, and Herbert Weinman (the "BCE Defendants"); and the Motion to Dismiss (Doc. 25) filed by Defendants Piedmont Fayette, Piedmont Hospital, and Piedmont Newnan Medical Center (the "Piedmont Defendants"). Both motions seek dismissal with prejudice as to Relator Rachel V. Rose[1] ("Rose") for failure to comply with statutory filing requirements.

---

[1] Although Rose purports to bring this action under the pseudonym "Jane Roe," she does so without the Court's permission. To the extent Rose intended to request such permission, that request is denied. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); 31 U.S.C. § 3730(b)(1) (requiring that civil actions for false claims "be brought in the name of the Government"); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (allowing departure from "the almost universal practice of disclosure" only when a party's privacy interests outweigh "the customary and constitutionally-embedded presumption of openness in judicial proceedings").

Having considered the pleadings,[2] the record in the case, and the applicable law, the Court concludes that the motions should be granted and the case dismissed with prejudice.

I.   Background

This is a *qui tam* action brought pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-33, by Relator Rachel V. Rose, a *pro se* litigant who is also a lawyer, against BCE, a Pennsylvania corporation, and forty other defendants (collectively, "Defendants"). BCE is a healthcare advisory company that provides data management and review software to its client hospitals. (Doc. 25 at 3). The other named defendants consist of BCE's clients, vendors, and contractors. (Doc. 5 ¶ 5). Rose was employed by BCE from February 1, 2011 to January 31, 2012. (BCE Employment Agreement 2, Doc. 5-2). Rose states that she tendered her resignation on December 5, 2011, after having informed "BCE's partners of her concerns about potentially fraudulent misrepresentations and potentially actionable misrepresentations by BCE's employees" and allegedly suffering retaliation as a result. (Doc. 3 at 13-14). When she resigned, Rose gave BCE a choice between paying her and exposing itself to

---

[2] Additional pleadings include: the Statement of Interest of the United States in Support of Motion to Strike Complaint and Amended Complaint and Dismiss with Prejudice (Doc. 6), Rose's Response (Doc. 7), and the BCE Defendants' Reply (Doc. 10); and Rose's Response to the BCE Defendants' Motion to Dismiss (Doc. 12) and the BCE Defendants' Reply (Doc. 15). Rose has not filed a response to the Piedmont Defendants' motion, and, pursuant to Local Rule 7.4, such failure to respond is taken as a representation of no opposition.

a variety of legal claims, including an FCA suit. (Doc. 5 ¶ 3). Although BCE did not meet her requests for payment, the two sides met on March 29, 2012 for a formal mediation, where Rose allegedly asked for $7,000,000 in exchange for not filing a lawsuit. (Doc. 5 ¶ 4; Doc. 12 at 4). BCE again declined to pay her, and on May 29, 2012, Rose wrote a letter to BCE, stating that she was "withdraw[ing] any offer to settle." (Letter from Rachel V. Rose, Esq., to Charles Davidson, Esq., Gen. Counsel, BCE (May 29, 2012), Doc. 10-1 Ex. C). The very next day, Rose filed her Complaint (Docs. 1 to 1-3), and, on June 11, 2012, filed her Amended Complaint (Docs. 3 to 3-4).

On or about May 30, 2012, Rose served the original Complaint on BCE and "[a]dditional Defendants and the appropriate United States Regulatory Agencies." (Doc. 1-3 at 18). Some of those additional defendants included "hospitals whose only connection to the allegations in [the] lawsuit is that they are customers of BCE." (Doc. 25 at 4). The following week, an internet site posted an article indicating that Rose had also provided a version of the Complaint to at least one nonparty:

> Rachel V. Rose, JD, MBA, serving as lead attorney, has filed a False Claims Act case involving alleged HIPAA/HITECH violations that may become a landmark case. The US Attorney General, other relevant government agencies and other defendants have also been sent the complaint….
>
> The alleged violations involve the improper storage, handling and transmission of PHI and ePHI by covered

3

>  entities, business associates and subcontractors. Public companies are involved ….

Bob Chaput, *BREAKING NEWS: HIPAA Suit Involving False Claims Act Filed*, http://abouthipaa.com/hipaa-hitech-news/breaking-news-hipaa-suit-involving-false-claims-act-filed (June 3, 2012). In response to a reader's comment, the author of that article wrote:

> From what I understand (I'm not an attorney !), but my friend Rachel V. Rose is lead attorney on this case… because it was filed "under seal", it is under review by the US government for sixty (60) days and, therefore, not in the public domain. I have seen a highly redacted version of the suit and it appears to be very significant in terms of potential regulatory violations and defendants named.

Bob Chaput, Posting to *BREAKING NEWS: HIPAA Suit Involving False Claims Act Filed* (June 4, 2012, 9:37 PM). According to BCE, it was subsequently "barraged with calls from its clients" and prospective clients, inquiring about the allegations of misconduct. (Doc. 5 ¶ 11). When Rose filed her Amended Complaint, she again served BCE, as well as the U.S. Department of Health and Human Services–Office for Civil Rights. (Doc. 3-4 at 1). Rose did not, however, serve the U.S. Attorney's Office in the Southern District of Texas, and that office learned of the suit only upon notification from BCE. (Doc. 6 ¶ 4).

When BCE filed its motion to dismiss, the U.S. Attorney's Office filed a statement of interest supporting that motion. The statement explained: "Relator's violation of the seal cannot be cured. She has shown blatant disregard for the procedural

4

mandates of the False Claims Act. The United States submits that she has lost her right to bring this FCA claim. Thus, the United States concurs with the relief requested in the Motion." (Doc. 6 at 6).

**II.** Discussion

The False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1). Under the FCA's *qui tam* provision, a private citizen, known as a "relator," may bring a civil action for such violations in the name of the United States Government, § 3730(b)(1), and receive a percentage of any proceeds awarded from that action, §§ 3730(d)(1)-(2). The Act provides certain procedures that relators must follow when filing such an action. *See* § 3730(b).

    A.    *Motion to Dismiss Qui Tam Claims*

Generally speaking, the right to sue under a statute is conditioned on compliance with that statute's procedural requirements. *See, e.g.*, *United States ex rel. Tex. Bitulithic Co. v. Fid. & Deposit Co. of Md.*, 813 F.2d 697, 698-99 (5th Cir. 1987) (restating the "well-established rule that where a statute creates a new liability and gives a special remedy for it, the limitations upon the liability become a part of the right

5

conferred and 'compliance with them is made essential to the assertion and benefit of the liability itself'" (quoting *United States ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 162 (1914))). More specifically, a private party's right to bring a civil action under the False Claims Act is conditioned on the following service and filing requirements:

> **(1)** The action *shall* be brought in the name of the Government….
>
> **(2)** A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses *shall* be served on the Government pursuant to [Rule 4(i)] of the Federal Rules of Civil Procedure. The complaint *shall* be filed in camera, *shall* remain under seal for at least 60 days, and *shall* not be served on the defendant until the court so orders.

31 U.S.C. § 3730(b) (footnote omitted) (emphases added). Federal Rule of Civil Procedure 4(i) states:

> **(1)** To serve the United States, a party must:
>
> **(A)(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
>
>> **(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; [and]
>
>> **(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C….

Failure to follow the statutory requirements can serve as grounds

6

for dismissing the complaint with prejudice, particularly when such failure frustrates the purposes underlying those requirements. *See, e.g.*, *U.S. ex rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287, 290 (6th Cir. 2010) (affirming dismissal with prejudice due to relator's "fatal deficiency" in failing to comply with FCA's requirement to file complaint under seal); *Foster v. Savannah Commc'n*, 140 F. App'x 905, 908 (11th Cir. 2005) (affirming dismissal with prejudice due to relator's noncompliance with *qui tam* action's procedural requirements); *U.S. ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 999 (2d Cir. 1995) (dismissing *qui tam* claims with prejudice because relator's failure to comply with seal and service requirements "incurably frustrated" statutory objectives); *Taitz v. Obama*, 707 F. Supp. 2d 1, 4 (D.D.C. 2010) (holding that FCA claims "must be filed under seal on behalf of the United States and not served on the defendant until ordered by the court" and that "[f]ailure to comply with these filing procedures results in dismissal of the relator's suit with prejudice"); *White v. Apollo Grp.*, 241 F. Supp. 2d 710, 714 (W.D. Tex. 2003) (dismissing FCA claims with prejudice because of failure to comply with "strict" procedural requirements of § 3730); *Burns v. Lavender Hill Herb Farm, Inc.*, No. 01-CV-7019, 2002 WL 31513418, at *6-7 (E.D. Pa. Oct. 30, 2002) (dismissing FCA claims with prejudice because "harm arising from a failure to follow the FCA procedures cannot be cured");

7

*Erickson ex rel. U.S. v. Am. Inst. of Biological Scis.*, 716 F. Supp. 908, 912 (E.D. Va. 1989) (holding that dismissal with prejudice is proper when violations of *qui tam* procedural requirements "cannot be cured or remedied").

The overall purpose of the Act's 1986 amendment was "to enhance the *Government's* ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266 (emphasis added). As a means to that end, the amendment "increase[d] incentives, financial and otherwise," in order "to encourage [private individuals] knowing of Government fraud to bring that information forward." *Id.* at 2, *reprinted in* 1986 U.S.C.C.A.N. at 5266-67. At the same time, the "new requirement that all *qui tam* actions … be filed in camera and remain under seal for at least 60 days" was added to "protect[ ] both the Government and the defendant's interests." *Id.* at 23-24, *reprinted in* 1986 U.S.C.C.A.N. at 5288-89. Among those interests is the prevention of claims brought for illegitimate purposes. Toward that end, the Act allows prevailing defendants to recover attorneys' fees from private individuals when the claim is "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." § 3730(d)(4).

> The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement

> provision of this Act for illegitimate purposes. The Committee encourages courts to strictly apply this provision in frivolous or harassment suits as well as any applicable sanctions available under the Federal Rules of Civil Procedure.

S. Rep. No. 99-345, at 29 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5294. Thus, as explained in the Senate report, the common motivation behind these amendments was not simply to increase the number of FCA claims, but to "bolster[ ] the Government's fraud enforcement effort" by increasing the number of such claims brought by private citizens for *legitimate* purposes. *Id.* at 8, *reprinted in* 1986 U.S.C.C.A.N. at 5273.

In examining this suit filed by Rose, it is apparent from her actions that her motivation has less to do with fighting fraud and more to do with harassing BCE for personal gain. Those actions are not minor procedural missteps; rather, they are serious transgressions of both the spirit and letter of the False Claims Act and evidence of a bad-faith motive. Initially, Rose attempted to circumvent the requirement that the Government be allowed to intervene in a *qui tam* action and the limitation on awards to private plaintiffs by seeking payment directly from BCE under threat of filing a *qui tam* suit. If successful, she would have withheld from the Government any knowledge of the alleged fraud, denied the Government an opportunity to intervene and enforce the FCA, and instead kept all of the financial gains for herself. In fact, it was not until BCE resisted her demands that

9

Rose "withdr[e]w any offer to settle," (Doc. 10-1 Ex. C), and subsequently filed her lawsuit. As further proof of her disregard for the FCA's purpose and procedural requirements, Rose brought the suit not in the Government's name, but in her own.[3]

After filing, Rose again committed egregious violations that did nothing to enhance the Government's ability to recover losses, but instead harmed BCE's reputation while continuing to deny the Government its right to intervene. Indeed, instead of serving the Government, as required by § 3730(b)(2) and Rule 4(i), Rose chose to serve BCE and its current and potential clients, which is prohibited by § 3730(b)(2). The backward result was that BCE learned of the suit before the U.S. Attorney's Office did, and, in fact, was the party that notified the U.S. Attorney's Office of the litigation. Even worse, Rose served third parties who "had no connection to BCE until [Rose] sent them copies of her Complaint." (Doc. 10 at 2) (citing Email from Michael E. Tarvin, Exec. Vice President, Gen. Counsel & Sec'y, Select Med. Hldgs. Corp., to Michelle Zingaro, A.U.S.A. (Jun. 20, 2012)). The result was that BCE was "barraged with calls from its

---

[3] In an apparent attempt to remedy that error, Rose replaced all mentions of her name in the text of the Amended Complaint with the pseudonym "Jane Roe." That change remedied nothing, however, as Rose's error was not in using her real name but in failing to bring the action in the Government's name. Regardless, she continues to identify herself as "Rachel V. Rose" in certain attachments, (*see, e.g.*, Doc. 3-10 at 16-17; Doc. 3-12 at 2, 5; Doc. 3-17 at 6-17, 27-28, 39-40; Doc. 7-1 at 17-19; Doc. 7-2 at 1-4, 14-17; Doc. 7-3 at 1-2), and, in the Amended Complaint, cites a publicly available article written by Rachel V. Rose, but changes the author's name in the citation to "Jane V. Roe," (Doc. 3-1 at 6 n.92).

10

clients" and prospective clients inquiring about Rose's allegations. (Doc. 5 ¶ 11).

In sum, these flagrant acts evince a complete disregard for the procedural requirements of the False Claims Act. As the U.S. Attorney's Office explained:

> [P]roper procedure was not followed at all. Although Relator filed the *qui tam* action under seal, she immediately proceeded to serve it on the defendants, in blatant violation of 31 U.S.C. § 3730(b)(2), which provides that defendants not be served until the court so orders. The *pro se* relator is an attorney, which makes her actions particularly egregious. Her breach of the seal strongly suggests that her purpose in filing the lawsuit is not to protect the interests of the United States.

(Doc. 6 at 6). Thus, considering the extent of Rose's transgressions and the weight of persuasive authority, which falls heavily on the side of dismissal with prejudice, the only sound conclusion is that Rose has irrevocably forfeited her right to bring these FCA claims as a relator.

### B. *Motion for Attorneys' Fees*

Section 3730(d)(4) provides that attorneys' fees may be awarded to prevailing defendants if "the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." In this case, given Rose's attempts to exact money from BCE prior to filing suit, her naming of BCE's clients as codefendants, and her disclosure of the Complaint after filing, the Court finds that

11

Rose's claim was brought primarily to harass BCE for personal gain. Just as one aim of the False Claims Act is to coordinate efforts between the Government and citizenry in order to prevent fraud, S. Rep. No. 99-345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266-67, another is to prevent illegitimate suits by "adopt[ing] attorneys fees sanctions to be charged against any *qui tam* plaintiff who brings a clearly frivolous or vexatious suit," *id.* at 16, *reprinted in* 1986 U.S.C.C.A.N. at 5281. This is just such a suit, as it not only fails to promote the legislative goals of the False Claims Act, but, in fact, it undermines them. Accordingly, Defendants should be entitled to recover their legal fees and expenses.

    C.    *Motion to Strike Remainder of Complaint*

"[D]istrict court[s have] ample discretion, under Rule 12(f) of the Federal Rules of Civil Procedure, to order stricken from the complaint any redundant or immaterial matter." *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979). In this case, Rose invokes a multitude of statutes, ranging from the Health Insurance Portability and Accountability Act (HIPAA) and Health Information Technology for Economic and Clinical Health Act (HITECH) to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), the Sarbanes-Oxley Act, and the Federal Trade Commission Act; and she states allegations

12

of retaliation. Although her pleadings are often so incoherent as to be unintelligible, (*see, e.g.*, Doc. 3 at 35 to Doc. 3-1 at 6) (quoting twelve pages of a journal article on the "thin skull" plaintiff rule and post-traumatic stress disorder), Rose clarifies that her remaining allegations fall under the umbrella of her FCA claim, (*see, e.g.,* Doc. 12 at 4) (arguing that the "diverse statutes relate to the same thing" (citing *United States v. Freeman*, 44 U.S. 556, 564 (1845)) (internal quotation marks omitted)); therefore, those allegations cannot survive the dismissal of her FCA suit. To the extent Rose intends to bring any other claims on behalf of herself, not the Government, those claims are inappropriate for a *qui tam* action and should be stricken from the record.

**III.** Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the motions to dismiss (Docs. 5, 25) are **GRANTED** and the False Claims Act claims are **DISMISSED** with prejudice as to Relator Rachel V. Rose and without prejudice as to the United States. It is further

**ORDERED** that the remaining allegations in the Complaint (Doc. 1) and Amended Complaint (Doc. 3) are **STRICKEN** from the record. It is further

**ORDERED** that Defendants are entitled to recover their reasonable attorneys' fees and shall file a request for a

13

specific amount with supporting documentation within thirty days.

**SIGNED** at Houston, Texas, this  7th  day of  August , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE