UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE ROE/RACHEL V. ROSE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1621 |
| | § | |
| BCE TECHNOLOGY CORPORATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Pending before the Court in the above referenced *qui tam* action are two motions for attorney fees and expenses filed by Defendant BCE Technology Corporation ("BCE") (Doc. 29) and Defendants Piedmont Fayette, Piedmont Hospital, and Piedmont Newman Medical Center (collectively, "Piedmont") (Doc. 30). Plaintiff Rachel V. Rose filed an utterly fantastic and delusional response, (Doc. 31) which she characterizes as a "response, motion for *in camera* review and motion for partial reconsideration." After reviewing the motions, the response, and the applicable law, the Court concludes that Piedmont's motion is granted in part, and BCE's motion is denied.

### I.    Background

On August 7, 2013, this Court entered its Opinion and Order (Doc. 27) and Final Order of Dismissal (Doc. 28) granting Defendants' Motion to Dismiss (Doc. 5) all of Rose's claims and dismissing her case with prejudice. In addition, the Court found that Rose's claims were brought primarily to harass Defendants for her personal gain, and that Defendants were entitled to recover their fees and expenses under the False Claims Act, 31 U.S.C. § 3730(d)(4). Section 3730(d)(4) provides, "the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person

bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4); *U.S. ex rel Bain v. Ga. Gulf Corp.*, 208 Fed. Appx. 280, 282 (5th Cir. 2006) (A claim brought to harass the defendant provides sufficient grounds to support an award of attorneys' fees under § 3730(d)(4)). The reasons for the Court's decision to award fees are contained in the August 7 Order, which the Court incorporates herein by reference. The Court is not inclined to reconsider its decision that an award of reasonable fees and expenses pursuant to § 3730(d)(4) is appropriate in this case.

In the August 7 Order, the Court requested that all Defendants "file a request for a specific amount with supporting documentation within thirty days." Doc. 27 at 13–14. Pursuant to the Court's Order, Piedmont submitted a request for an award of $23,464.00 with supporting documentation. BCE submitted a request for an award between $380,287.00 and $497,037.00 without any supporting documentation whatsoever. Noting that a "fee applicant bears the burden of establishing entitlement to an award," the Court entered an Order on January 7, 2014 requiring BCE to provide documentation supporting its fee request in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) within twenty days. BCE timely submitted supplemental documentation. Doc. 33.

## II.   Legal Standard

The determination of whether a fee request is reasonable is based on a two-step process. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "First the court calculates the 'lodestar' by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

"While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.'" *Coleman v. Hous. Indep. Sch. Dist.*, 202 F.3d 264 (5th Cir. 1999) (Table) (available on Westlaw); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). Furthermore, the relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002)*, abrogated on other grounds, Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006). The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant legal community. *Condon v. Hunting Energy Servs., L.P.*, No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006). The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon*, 2006 WL 2882857, at *2, (citing *La. Power & Light Co.*, 50 F.3d at 329). The fee applicant bears the burden of showing that the hours claimed were reasonably expended. *Hensley v. Eckert*, 461 U.S. 424, 437 (1983). Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not. *Hensley*, 461 U.S. at 434; *La. Power & Light*, 50 F.3d at 324.

The fee applicant should exercise "billing judgment" and keep billing time records in a way that enables the reviewing court can "identify distinct claims." *Hensley*, 461 U.S. at 437. *See also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (An applicant for fees must submit documentation, e.g., contemporaneous billing records or detailed invoices or affidavits, to permit the court to identify noncompensable hours and to determine an appropriate amount of fees.). Counsel must "exclude from a fee request hours that are excessive,

redundant, or otherwise unnecessary . . . ." *Id. See also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *See also La. Power*, 50 F.3d at 324-25 ("[T]he documentation must be sufficient for the court to verify that the applicant has met its burden. . . . [A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*. . . . Failing to provide contemporaneous billing statements does not preclude an award of fees per se as long as the evidence produced is adequate to determine reasonable hours."). "Litigants take their chances when submitting fee applications" without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents. *La. Power*, 50 F.3d at 327. The "'contemporaneously created time records [should] specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Hilton v. Executive Self Storage Assocs.*, Civ. A. No. H-06-2744, 2009 WL 1750121 at *10 (S.D. Tex. June 18, 2009) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The court excludes from the award any time that is "excessive, duplicative, or inadequately documented." *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010).

Once the court determines the lodestar, it may adjust the amount up or down based on the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 453, 457 (5th Cir. 1993). *Id.* The factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar

work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. There is a strong presumption that the lodestar is a reasonable fee. *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). An award of attorneys' fees under § 3730(d)(4) is reviewed for abuse of discretion. *U.S. ex rel Bain v. Ga. Gulf Corp.*, 208 Fed. Appx. 280, 282 (5th Cir. 2006).

### III.    Discussion

#### A.    *Piedmont's Request*

Piedmont's request is accompanied by the affidavit of Robert C. Threlkeld (Doc. 30-2), counsel of record for Piedmont, and copies of the attorneys' fee statements that were submitted to and paid by Piedmont in connection with this matter (Doc. 30-2, Ex. 1). The following chart summarizes the requested hourly rate, number of billed hours, and lodestar for each attorney for whom Piedmont seeks an award of fees:

| Attorney | Requested Rate | Requested Hours | Requested Lodestar |
|---|---|---|---|
| Robert C. Threlkeld | $420 | 5.4 | $2,268 |
| Holly Pierson | $350 | 54.3 | $19,005 |
| Dan Mohan | $475 | 1.0 | $475 |
| Anthony Cestaro | $65 | 26.4 | $1,716 |

Threlked states that these rates are customary for similar work by attorneys of comparable skill and experience in Atlanta, Georgia. Doc. 30-2 ¶ 6. The relevant legal community in this case is Houston, not Atlanta, and the reasonableness of the rates will be

measured accordingly. Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case. *See Preston Exploration Co., LP v. GSP, LLC*, 2013 WL 3229678, at *5 (S.D. Tex. June 25, 2013) (aggregating cases determining reasonable market rates for complex litigation). The Court agrees that these hourly rates are reasonable in light of the attorneys' experience, areas of expertise, and the prevailing hourly rates in the Houston area.

After carefully reviewing the time records, the Court concludes that, for the most part, they are detailed and reasonable. The Court notes, however, that Ms. Pierson spent more than 35 hours preparing, researching, and drafting the motion to dismiss. The Court finds that the time allotted for preparation of the subject motion is excessive, as Ms. Pierson is an experienced litigator in this area, and also duplicative given that Mr. Cestaro spent 16 hours researching and drafting a memorandum in preparation for the same motion. In light of these considerations, the Court finds that an award of 25 hours for Ms. Pierson's preparation of the subject motion is more appropriate and therefore reduces the award for her hours by ten to 44.3. Having considered Piedmont's request for recovery of attorneys' fees in light of the lodestar and the *Johnson* factors, and in the absence of any objection by Rose to the hourly rates or the amount of time spent, the Court will award Piedmont $19,964.00 in attorneys' fees. Piedmont does not seek recovery of any litigation-related costs in this matter.

### B.     *BCE's Request*

BCE's initial petition for payment of attorney fees (Doc. 29) included the following "true and correct summary of the legal fees and expenses incurred by BCE Defendants in connection with the filing of the Complaint by Plaintiff and her sending it to multiple governmental agencies, clients of BCE, and third parties:"

| Gordon & Rees | $8,534 |
| --- | --- |
| Epstein, Becker & Green | $122,465 |
| Goldberg, Kamin & Garvin | $15,000 |
| Baker & McKenzie | $13,766 |
| Charles Davidson | $210,150–$326,900 |
| Computer Expenses | $4,668 |
| 2012 Mediation in Houston | $5,704.15 |
| **Total:** | **$380,287.00–$497,037.00** |

Following the Court's January 7 Order, BCE submitted a supplemental petition for payment of attorney fees accompanied by the affidavit of Charles E. Davidson, counsel of record and general counsel for BCE. Doc. 33. Attached to Mr. Davidson's affidavit are the billing records for his time and that of four law firms who all provided services to BCE in this matter. Doc. 33, Ex. B. In total, BCE requests attorney fees for Mr. Davidson, BCE's inside counsel; Goldberg, Kamin & Garvin, BCE's outside counsel; Gordon & Rees, BCE's retained local counsel; Baker & McKenzie, BCE's specialized local counsel who assisted with the government agency investigations; and Epstein, Becker & Green, specialized counsel with "in depth" expertise who "assisted in evaluating claims" and "develop[ing] a strategy." *Id.* Also attached to Mr. Davidson's affidavit is a summary of the background of most active lawyers who participated in the case and their respective rates (between $225 and $750) (Doc. 33, Ex. B), and three articles reviewing the highest hourly partner rates at the biggest firms in the country, which Mr. Davidson suggests supports the reasonableness of the hourly rates charged in this matter. Doc. 33, Ex. C.

BCE also requests that it be allowed to recover costs incurred for forensic accountants, computer experts, and specialized counsel that BCE retained in connection with the suit. Attached to Mr. Davidson's affidavit are billing records from William Gross, a "health care consultant," and a PVL Forensics, a forensics expert. Doc. 33, Ex. A.

Acknowledging that the amount of fees requested is grossly disproportionate to the amount of documents filed in this case, BCE contends that "the scope of the litigation extended far beyond the pleadings, and the legal fees and costs incurred by Defendant BCE were all directly tied to the scheme of Plaintiff…" Aff. of Charles E. Davidson ¶ 7 (Doc. 33). Davidson recounts that six months prior to filing her complaint, Plaintiff threatened filing suit in an attempt to extort money from BCE. *Id.* ¶ 8. Upon rejection of her demands, Plaintiff blatantly disregarded the procedural mandates of the False Claims Act by breaking the seal and sending copies of the complaint and amended complaint to multiple government agencies, as well as BCE's clients and prospective clients. *Id.* BCE argues that because Plaintiff acted in bad faith and filed this suit for purposes of harassment, it should be allowed to recover all fees and expenses incurred dating back to Plaintiff's initial threats of filing suit in December 2011. *Id.* ¶ 9. In the alternative, BCE requests all fees and expenses incurred after the complaint was filed in May 2012.

Davidson's affidavit provides the following two summaries of the fees and expenses requested. The first summary includes all costs dating back to plaintiff's initial threats of filing suit. The second summary includes only those costs incurred after the filing of the complaint.

**Expenses & Costs Incurred Since December 2011**

| Gordon & Rees | $19,433.88 |
|---|---|
| Epstein, Becker & Green | $136,678.58 |

| | |
|---|---|
| Goldberg, Kamin & Garvin | $17,723.26 |
| Baker & McKenzie | $28,975.22 |
| Charles Davidson | $247,602.60 |
| William Gross | $31,700.00 |
| PVL Forensics | $8,000.00 |
| **Total** | **$490,113.54** |

**Expenses & Costs Incurred Since May 2012**

| | |
|---|---|
| Gordon & Rees | $19,433.88 |
| Epstein, Becker & Green | $122,051.16 |
| Goldberg, Kamin & Garvin | $16,745.35 |
| Baker & McKenzie | $28,975.22 |
| Charles Davidson | $127,552.50 |
| William Gross | $18,600.00 |
| PVL Forensics | $8,000.00 |
| **Total** | **$341.358.11** |

BCE has not pointed to, and the Court cannot find, another case where a court expanded the scope of fees and costs allowable under § 3730(d)(4) to include fees incurred prior to the filing of the suit or the costs of defending against government investigations prompted by the suit. Case law identifying vexatious or harassing litigation under the False Claims act is quite limited, and case law awarding fees in such cases is even scarcer. A review of the case law that does exist indicates that courts generally have tailored the scope of awards to defendants under §

3730(d)(4). *See, e.g., Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("A defendant is entitled [under § 3730(d)(4)] to attorney's fees for only those particular claims of a plaintiff deemed to be frivolous."); *U.S. ex rel. Ubl v. IIF Data Solutions*, No. 1:06-CV-641, 2010 WL 1726767 (E.D. Va. April 28, 2010), *reversed on other grounds* (tailoring the award so that defendants were awarded fees solely undertaken in response to plaintiff's frivolous claims); *U.S. ex rel. Minna Ree Winer Chilren's Class Class Trust v. Regions Bank of La.*, No. 94-4085, 1996 WL 339993 (E.D. La. June 18, 1996) (excluding from the scope of allowable fees those associated with litigating a jurisdictional issue raised *sua sponte* by the court).

The Court finds that tailoring is appropriate in this case and concludes that only those fees incurred after the filing of the complaint are recoverable. Additionally, the Court finds that the costs BCE incurred for forensic accountants, computer experts, healthcare consultants, and specialized counsel in connection with the settlement negotiations and government investigations exceed the scope of the "reasonable attorneys' fees and expenses" contemplated by the statute and should be excluded from the award. The only recoverable fees in this matter are the reasonable attorney fees incurred in defending against the litigation after the complaint was filed. Therefore, the Court will examine only those billing records from Gordon & Rees, Goldberg, Kamin & Garvin, and Charles Davidson to determine the reasonable amount of fees and costs incurred in this case in light of the lodestar and the *Johnson* factors.

Despite being afforded an opportunity to supplement its initial request in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), BCE has again supplied the Court with inadequate, albeit voluminous, documentation. Even when limiting the scope of the Court's examination of the documentation to these three entities, it is impossible for the Court to ascertain the reasonable attorneys' fees and expenses incurred by BCE *after* the

complaint was filed. The records reveal a total lack of billing judgment. There is widespread duplication of efforts in this matter among the three entities. In his summary of Gordon & Rees's role in the case, Davidson admits that "they primarily reviewed documents prepared [by] Kamin and filed the same with the Court." Doc. 33, Ex. B. These duplicative efforts were billed at an hourly rate between $310 and $405. It is not the Court's burden to parse out all of the non-duplicative time. In addition, the Gordon & Rees billing records include costs such as travel, parking, meals, which are not recoverable under 28 U.S.C. § 1920. *See U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F. Supp. 2d 442, 449; (limiting costs recoverable under §3730(d)(4) to those enumerated in § 1920).[1]

The records of Mr. Davidson, who requests the vast majority of the fees, are also rife with impermissible block billing. "Block billing" refers to the "time-keeping method by which each lawyer…enters total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752, 2011 WL 487754, at *4 (citing Glass *v. United States*, 335 F. Supp.2d 736, 739 (N.D. Tex. 2004). "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately

---

[1] Section 1920 allows recovery of the following costs:

    (1) Fees of the clerk and marshal;

    (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

    (3) Fees and disbursements for printing and witnesses;

    (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

    (5) Docket fees under section 1923 of this title; [and]

    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Id.* Mr. Davidson's time records also include time related to contemporaneous litigation proceedings filed by BCE against Plaintiff in Pennsylvania and do not enable the Court to identify time that was expended in relation to the litigation filed in this Court. Based on these records, the Court cannot calculate the reasonable, necessary, and non-duplicative amount of fees pertaining to this case.

In some instances, courts have found that reductions for lack of billing judgment or block billing somewhere between 15% and 35% were reasonable. *See Walker*, 99 F.3d at 770 (when there is no evidence of billing judgment, the appropriate remedy is to reduce hours awarded by a percentage intended to replace the exercise of billing judgment). *See, e.g., Leroy v. City of Hous.*, 831 F.2d 576, 586 (5th Cir. 1987) (reducing award by 13%); *Saizan*, 448 F.3d at 799–800 & n.25 (affirming district court's 10% reduction for lack of evidence of billing judgment); *Hopwood*, 236 F.3d at 279 (25% reduction for lack of billing judgment and vague and duplicative work); *Johnson-Richardson v. Rangigpahoa Parish Sch. Bd.*, No. 12-0140, 2013 WL 5671165, at *4 (E.D. La Oct. 15, 2013 (30% reduction for block billing); *Verizon Bus. Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases showing reduction between 15% and 35% have been found to be reasonable), *vacated on other grounds*, 467 Fed. Appx. 312, 2012 WL 1414448 (5th Cir. April 24, 2012). The Court concludes, however, that a reduction is not possible in this case where BCE has not supplied the Court with an accurate total of the fees incurred for each of Gordon & Rees, Goldberg, Kamin & Garvin, and Davidson. BCE's request for fees for Gordon & Rees in its initial petition was $8,534 and the request for fees in its supplemental petition was $19,433.88. Similarly, the request for Goldberg, Kamin & Garvin, increased from $15,000 to $16,745.35, and the request

for Davdison decreased from between $210,150–$326,900 (depending on the rate used) to $127,552.50.  Nowhere does BCE explain the discrepancies between the figures provided in the initial and supplemental petitions.  These discrepancies indicate, however, that BCE's estimates are not reliable.  Therefore, the Court cannot ascertain a reasonable figure from which to deduct a percentage for block billing and lack of billing judgment.

It is fee applicant who bears the burden of proving that a request is reasonable.  In this case, where BCE requested over $340,000 in fees for a case that was dismissed at the pleading stage, it had a significant burden.  BCE has twice been afforded opportunities to meet this burden and twice it has failed.  Consequently, BCE's fee request is denied.

**IV.  Conclusion**

Accordingly, it is hereby

**ORDERED** that the motion for award of attorney fees filed by Defendants Piedmont Fayette, Piedmont Hospital, and Piedmont Newman Medical Center (Doc. 30) is **GRANTED** in the amount of **$19,964.00**.  It is further

**ORDERED** that the motion for award of attorney fees filed by Defendant BCE Technology Corporation ("BCE") (Doc. 29) is **DENIED**.

SIGNED at Houston, Texas, this 28th day of March, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE